```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE

 2              NORTHERN DISTRICT OF TEXAS
                     DALLAS DIVISION
 3
    UNITED STATES OF AMERICA,      )
 4                                 )
                                   )
 5              Plaintiff,         )
    vs.                            )Case No. 3:19-CR-371-L
 6                                 )
                                   )
 7  PAULINO GOMEZ BETANCOURT,      )
                                   )
 8              Defendant.         )
          ---------------------------------------
 9           REPORTER'S TRANSCRIPT OF PROCEEDINGS
10          HAD ON MONDAY, NOVEMBER 15, 2021
                   SENTENCING HEARING
11
     BEFORE THE HONORABLE SAM A. LINDSAY, JUDGE PRESIDING
12
               A  P  P  E  A  R  A  N  C  E  S
13
    MR. P.J. Meitl-DOJ
14  US Attorney's Office
    Northern District of Texas
15  1100 Commerce Street
    3rd Floor
16  Dallas, TX 75242
    214-659-8680
17  philip.meitl@usdoj.gov

18  COUNSEL FOR THE GOVERNMENT

19  MS. SHERYLYNN A. KIME-GOODWIN-FPD
    Federal Public Defender
20  525 Griffin, Suite 629
    Dallas, TX 75202
21  214-767-2746
    shery_kime-goodwin@fd.org
22
    COUNSEL FOR THE DEFENDANT
23

24

25
```

```
1                   I     N     D     E     X
2                                         VOLUME    PAGE
3   HEARING                                  I        3
4   COURT'S RULING                           I       22
5   REPORTER'S CERTIFICATE                   I       31
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT,
2  WITH ALL PARTIES AND COUNSEL PRESENT.)
3    THE COURT: Ms. Stewart, would you swear in
4  Ms. Birnbaum, please.
5    (INTERPRETER SWORN.)
6    THE COURT: Thank you, Ms. Stewart.  This is Case
7  No. 3:19-CR-00371-L, United States versus Paulino Gomez
8  Betancourt.
9    Who is representing the government?
10    MR.  MEITL: Good morning, Your Honor.  P.J.
11  Meitl for the government.
12    THE COURT: Good morning.  Thank you, Mr. Meitl.
13    Who is representing Mr. Gomez Betancourt?
14    MS. KIME-GOODWIN: Good morning.
15  Sherry Kime-Goodwin for Mr. Betancourt.
16    THE COURT:  All right, sir, are you
17  Paulino Gomez Betancourt?
18    THE DEFENDANT: Yes, sir.
19    THE COURT: Sir, do you know why you are here
20  today?
21    THE DEFENDANT: Yes, Your Honor.
22    THE COURT: Why is that?
23    THE DEFENDANT: For a drug case.
24    THE COURT: Well, that is correct.  We are here
25  because you pleaded guilty to Count 3 of the -- excuse

1  me -- Count 1 of the indictment.  And we are here today

2  for your sentencing.  Do you understand that, sir?

3          THE DEFENDANT: Yes, Your Honor.

4          THE COURT: Okay, the Court misspoke.  You

5  pleaded guilty to Count 3 of the indictment; you do

6  understand that; do you not, sir?

7          THE DEFENDANT: Yes, Your Honor.

8          THE COURT: Are you ready to proceed, sir?

9          THE DEFENDANT: Yes, Honorable Judge.

10          THE COURT: All right, with respect to this

11  matter, the Court has before it the Presentence

12  Investigation Report which includes Part G.  Part G of

13  the Presentence Report sets forth the recommended terms

14  and conditions of supervision and reasons therefore, the

15  Government's Statement of the Presentence Report, the

16  Defendant's Response to the Presentence Report in which

17  he stated that he had no objections, Defendant's

18  Sentencing Memorandum in which he requests a variance.

19      Ms. Kime-Goodwin, have you had sufficient time to

20  read and discuss the Presentence Report which includes

21  Part G with your client, Mr. Betancourt?

22          MS. KIME-GOODWIN: I have, Your Honor.

23          THE COURT: Are you satisfied that he understands

24  the recommended terms and conditions of Part G of the

25  Presentence Report?

1            MS. KIME-GOODWIN: Yes, Your Honor.

2            THE COURT: All right, Mr. Betancourt, have you

3    had an opportunity to read and discuss the Presentence

4    Investigation Report which includes Part G that sets

5    forth the terms and conditions -- the recommended terms

6    and conditions and reasons therefore regarding the

7    Presentence Report?

8            THE DEFENDANT: Yes, Honorable Judge.

9            THE COURT: Do you have any questions regarding

10    Part G of the Presentence Report?

11            THE DEFENDANT: No; it's fine.

12            THE COURT: Thank you, sir.  All right, I

13    understand there are no objections to the Presentence

14    Report, so we will proceed to determine the advisory

15    guidelines.  The Court determines that the probation

16    officer has correctly determined the offense level and

17    base offense level where this offense is found in United

18    States Sentencing Guidelines Section 2D1.1(c)(1).  If the

19    base offense level involved if the base offense level

20    involved 45 kilograms or more of methamphetamine, the

21    base offense level is 38.  So we start out with a base

22    offense level of 38.

23        We next proceed to specific offense characteristics.

24    Pursuant to United States Sentencing Guidelines Section

25    2D1.1(b)(5), two levels are added to the base offense

1  level because the methamphetamine that was recrystallized

2  by Mr. Betancourt was imported into the United States

3  from Mexico, and Mr. Betancourt is not subject to a

4  mitigating role adjustment.

5      Also, with respect to specific offense

6  characteristics, two levels are added pursuant to United

7  States Sentencing Guidelines Section 2D1.1(b)(12),

8  because Mr. Betancourt maintained a premises for the

9  purpose of manufacturing or distributing a controlled

10  substance and this was shown by his possession of the key

11  of the residence at 2215 Boulder Avenue which is the

12  place where he recrystallized the methamphetamine.

13      The Court will also say this pursuant to United

14  States Sentencing Guidelines Section 4B1.1(a), a

15  defendant is a career offender if, one, the Defendant was

16  at least 18 years old at the time he committed the

17  instant offense of conviction.  Two, the instant offense

18  of conviction is a felony that is either a crime of

19  violence or controlled substance offense.  And three, the

20  Defendant has at least two prior felony convictions of

21  either a crime of violence or a controlled substance

22  offense.

23      With respect to this particular case, Mr. Betancourt

24  was 48 years old when he committed the controlled

25  substance offense in this case and prior to this offense

1  he has prior convictions for Possession with Intent to

2  Distribute 500 grams of cocaine.  That is case

3  0659-01-BR, and he also has a conviction for trafficking

4  methamphetamine case number 15-CR-0107. Both of these

5  cases are controlled substance offenses.  As such,

6  Mr. Betancourt qualifies as a career offender.

7       The statutory maximum term of imprisonment for the

8  offense of conviction is 20 years, therefore, the career

9  offender level is 32.  This offense level is less than

10  the otherwise applicable offense level of 42; therefore,

11  the otherwise applicable offense level of 42 is used to

12  calculate Mr. Betancourt's total offense level.

13       So we are at level 42.  We next come to the issue of

14  acceptance of responsibility.  The Court determines that

15  Mr. Betancourt has accepted responsibility for his role

16  in the offense.  The only question is whether he gets a

17  two-level or a three-level reduction for acceptance of

18  responsibility.

19       Mr. Meitl, does the government move pursuant to

20  United States Sentencing Guidelines Section 3E1.1(b) for

21  the additional level of acceptance of responsibility?

22       MR.  MEITL:  Yes, Your Honor, the government so

23  moves.

24       THE COURT: Thank you, Mr. Meitl.

25       The offense level is 16 or greater.  The government

1  has moved for the additional level for acceptance of

2  responsibility.  The government's motion is well taken

3  and it is granted.  Accordingly, Mr. Betancourt will

4  receive a 3-level reduction for acceptance of

5  responsibility.

6      With a 3-level reduction for acceptance of

7  responsibility, that makes his total offense level 39.

8  He has a Criminal History Category of VI.  The guideline

9  range would be 360 to life.  The statutory maximum

10  authorized sentence of 20 years is less than the minimum

11  of applicable guideline range, therefore, the guidelines

12  term of imprisonment is 240 months.

13      Any questions or comments concerning the Court's

14  determination or calculation of the advisory guidelines?

15          MR. MEITL: No, Your Honor.

16          MS. KIME-GOODWIN: Not from the defense, Your

17  Honor.

18          THE COURT: Thank you, Counsel.

19      In addition to considering the advisory guidelines

20  the Court must consider certain statutory factors.  These

21  statutory factors are set forth in Title 18 United States

22  Code Section 3553(a)(1) through (7).  When a court

23  considers these statutory factors, it must impose a

24  sentence that is sufficient but not greater than

25  necessary to accomplish the purposes set out in paragraph

1    (a)(2) of Section 3553 Title 18.  In particular, a

2    sentencing court must impose a sentence that reflects the

3    seriousness of the offense, one that promotes respect for

4    the law, one that provides just punishment, one that

5    serves as an accurate deterrent to criminal conduct on

6    the part of the defendant, one that protects the public

7    from further crimes of the defendant, and finally, a

8    sentence that provides the defendant with the needed or

9    necessary educational or vocational training, medical

10   care, or other correctional treatment in the most

11   effective manner.

12        The Court will consider the provisions of Paragraph

13   3553 Title 18.  That particular provision allows a court

14   to consider the history and characteristics of an

15   individual as well as the nature and the circumstances of

16   the offense.

17        Ms. Kime-Goodwin, would you like to be heard on

18   behalf of your client?

19             MS. KIME-GOODWIN: Yes, Your Honor, I would.

20             THE COURT: You may proceed.

21             MS. KIME-GOODWIN: Your Honor, I previously filed

22   with the Court a sentencing memorandum.  As the Court

23   knows, I am asking for a variance in this case.  As the

24   Court has noted, the Court is in a position where the

25   Court must determine and impose a sentence that is

1 sufficient but not greater than necessary considering the

2 3553(a) factors.

3       Your Honor, I will talk a little bit about the

4 nature and the circumstances of the offense and history

5 and characteristics of this Defendant.  Your Honor, this

6 is clearly a very serious offense.  The guidelines range

7 was 360 to life.  Mr. Betancourt has been fortunate and

8 that the government made an offer where he has a cap of

9 20 years in place.

10       I think the question is how does somebody get into

11 this situation that Mr. Betancourt is in right now.  Your

12 Honor, in talking with Mr. Betancourt, I think a lot of

13 this has to do with just, you know, the circumstances

14 under which he grew up.

15       I mean, this is someone that as far as poverty that

16 he knew in Mexico, it is not the type of poverty that we

17 see here in the United States.  This is an individual

18 who, you know, basically went hungry, many, many days.

19       He was abandoned by his father, raised by a

20 grandfather.  The relationship with the grandfather was

21 an abusive one.  In addition to going hungry, this is a

22 person who was beaten, didn't receive school education,

23 talking to him about, you know, his childhood, never had

24 toys, never even celebrated his birthday or anything of

25 that nature.

1    The relationship with the grandfather, it was so bad

2    his grandfather kicked him out when he was 13 years old.

3    There was a period a 13-year-old boy fending for himself.

4    No education, nothing.  So I mean, he just really came

5    from circumstances that were really dire.  Coming from

6    those type of circumstances where you don't have support,

7    as this Court is well aware, drug cartels are more than

8    happy to give support as far as letting people work for

9    them.  And for someone who has no education or very

10   limited education in coming from those type of desperate

11   situations.  You can see this is the type of person that

12   would be taken in by the cartel.

13       Your Honor, that is what has happened.  In talking

14   to Mr. Betancourt about, you know, hey, you know, he is

15   not -- he is basically just a cog in the machine.  This

16   is not somebody as far as when we look at the nature and

17   circumstances of the offense that, you know, had any kind

18   of decision making role or, you know, anything of that

19   nature.

20       His job, for the cartel was to do whatever the

21   cartel told him to do, and you know, he has talked to me

22   about the fact, Sherry, it is not like I made a lot of

23   money.  He said working for them is what allowed me to

24   basically keep a roof over my wife's head, my children's

25   head, and put food on the table.  And that was about it,

1  you know as far as what he was getting from the cartel.

2     Your Honor, if you look at the facts of this case as

3  far as just you know the Presentence Report notes I mean

4  this is so typical of a cartel.  I mean, they have kept

5  these people isolated from one another.  They each had

6  their little specific job that they were doing, and his

7  job was to recrystallize the meth.  That is all he did at

8  the house.  He didn't distribute.  He didn't even know

9  the other -- you know -- as noted in the Presentence

10 Report these other co-Defendants because he had this one

11 specific role that that is what he was trained by the

12 cartel to do.  That is what they wanted him to do, and

13 that is what he was doing to, you know, just barely keep

14 a roof over their head of his wife and family in Mexico,

15 and to make sure that everybody could eat.

16     So that is a very desperate circumstance for

17 someone in this type of situation.  Your Honor, I

18 recognize that my client has a horrible criminal history.

19 His criminal history is not good.  This is someone who

20 has prior offenses.  We know the Court has to balance

21 that against that with whatever sentence the Court gives

22 him in this case.  But with regard to at least one of

23 these offenses the one is going to be completed, but we

24 really don't know what is going to happen with the other

25 case in Georgia as of the writing didn't look like a

1  detainer was lodged but there is certainly an ability as

2  far as Georgia to basically come and get him and have him

3  serve the remainder of that time on that sentence,

4  so.  This is somebody that this situation is a dire one.

5  If the Court takes those things into account in addition

6  to considering the other defendants who have been

7  sentenced thus far.

8      I believe one defendant received 120 months and

9  another defendant has received 150 months.  Your Honor,

10 we would just argue that this is one of the cases that

11 cries out for a variance.

12     Additionally, Your Honor, I mentioned as far as

13 talking about his situation, but, Your Honor, my client

14 as far as the work that he has done, he showed me, if he

15 lifted up his pant legs for the Court he has knee braces

16 on both knees.  His knees are shot.  He falls a lot

17 because he has basically worked his entire life and worn

18 his knees out.  His hands are covered callouses.  He used

19 to launder clothes in Mexico, wringing clothes.  This is

20 somebody as far as the choices that they have.  He has

21 led a hard life.

22     We hope the Court will take that into consideration

23 and we believe that a variance is appropriate under the

24 circumstances.

25         THE COURT: How long has he worn the knee braces?

1          MS. KIME-GOODWIN: They had him on the knee

2    braces for the past couple of months, but he has had knee

3    problems since 2012.  Your Honor, I am sorry I forgot.

4    Right now he has a brace on his back.  Right now as far

5    as he has got some bulging disks, so it is kind of all

6    structural, you know, as far as the issues that he had

7    had medically with his health.

8          Your Honor, we are going to request placement at the

9    medical center FCI-Fort Worth.  We do believe under the

10    circumstances that a variance is appropriate.  That's all

11    I have, Your Honor.

12          THE COURT: Let me ask you this question,

13    Ms. Kime-Goodwin.  One thing that you eluded to and you

14    mentioned was the sentences that other individuals

15    received.

16          MS. KIME-GOODWIN: Yes, Your Honor.

17          THE COURT: And by making that statement, I would

18    have to infer that you are -- referring to subcategory or

19    subparagraph (6) of Section 3553(a).

20          MS. KIME-GOODWIN: Yes, Your Honor, I am.

21          THE COURT: Which talks about the Court needs to

22    be aware or needs to avoid unwarranted sentencing

23    disparities among defendants with similar records who

24    have been found guilty of similar conduct.

25          Whenever I have multiple defendants in a single

1  case, I always keep a single chart of what has happened

2  to those defendants who I have sentenced.  In this

3  particular case it was Uvalle who was given 156 months.

4  The statutory maximum was 240.  He had a Criminal History

5  Category I.

6       Rosales was given 120 and his guidelines range was

7  210 to 240 months.  He had a lower total offense level.

8  He had a offense level of 37.  He had a Criminal History

9  Category of I.  As you are quite aware, the Criminal

10  History Category is reflective of the prior criminal

11  convictions, you know, to an extent they are not counted

12  any more.

13       But Mr. Betancourt has a Criminal History Category

14  of 6 and both of the individuals whom I have sentenced

15  had a Criminal History Category of I.  So when you talk

16  about subparagraph (6) of 3553(a), it talks about

17  defendants with similar records.  Mr. Betancourt's record

18  is not similar to those other two individuals I have

19  sentenced thus far.

20       So I do not think that subsection 6 would be

21  applicable as a basis for providing a variance insofar as

22  they are concerned.  So when you are asking for a

23  variance, what type of variance are you requesting?

24       MS. KIME-GOODWIN: Your Honor, if the Court is

25  unwilling to give a variance under that particular

1  subsection, I do believe it is within the Court's power

2  to be able to grant a downward variance based on the

3  balancing as far as like the need -- the need as far as

4  his medical history and his personal history.

5      Your Honor, the difficult thing about asking for

6  downward variance, I would point out to the Court under

7  those type of circumstances, when I look and I am able

8  the look at the docket sheet and see what other

9  defendants have received, we are not necessarily privy to

10 like their Criminal History Category.  That is something

11 when we bring to the Court, we never know.  Therefore,

12 Your Honor, there is going to be information that with

13 regard to those two co-Defendants, I just don't know.

14     Again, those were not people that my client knew, so

15 as far as providing information about them, I don't know

16 everything.  What I can tell the Court is this.  That,

17 yes, I understand that his criminal history that he has

18 prior convictions.  His criminal history is high.  With

19 regard to his criminal history especially in comparison

20 to the other co-Defendants, yes, it is worse.  But Your

21 Honor, I think there are other factors here under the

22 sentencing statute that balances that out.  I think, you

23 know, considering his age.  This is a man that as the

24 Court noted when this again is 48 years old.  Here he is,

25 knees shot, back shot, you know.  He is basically trying

1 to work himself to death to try to support a family.  I
2 think that given that type of history, that type of
3 background that he does deserve something less that 20
4 years.  That's all I have, Your Honor.
5          THE COURT: All right, thank you, Ms. Kime-
6 Goodwin Mr. Betancourt, in other words, sir, if there is
7 something you would like to tell me about this matter,
8 you may do so at this time.
9          THE DEFENDANT: What I would like to do and say
10 is I would like to apologize to everybody here to you and
11 to the government who is accusing me.  And I would like
12 for you to consider I did involve myself in drugs again,
13 but I was not selling the drugs nor was I coming here to
14 work with those people or anything like that.  And they
15 tossed me out in McAllen.  They tossed me out.  They left
16 me there.  You could say the coyote who was bringing me
17 over here.  And I came here to work right, not to work in
18 drugs.  I knew that I had problems with drugs already.
19 And I wanted to work right, but they left me, tossed me
20 there, so I got involved in drugs again, and I know that
21 I am guilty.  I didn't want to work in that or anything.
22      Because in Mexico, I don't have a house.  I have
23 nothing.  I have never -- and my wife and my daughter are
24 struggling greatly right now.  My wife earns 750 pesos a
25 week.  It is equivalent to $35 here.  And my daughter is

1 in school now and what little she sends to me, I send to

2 her so I can survive -- so she can survive there, and I

3 pay about $3,000 between bills and rent.  It is very

4 difficult, and I would like for you to consider, I wasn't

5 working with these people.  And I ask you to be

6 considerate of me.  I have problems with my back.  I

7 can't do heavy lifting work.

8        THE COURT: Let me ask you one question,

9 Mr. Betancourt.  You said it more clearly more recently.

10 The last statement you made was, quote, unquote, I was

11 not working with these people.  What do you mean by that

12 because you were recrystalizing the methamphetamine.  You

13 may have played a different role than some of the other

14 defendants, but you were recrystallizing the

15 methamphetamine so you were definitely assisting the

16 other people who were involved, so that the

17 recrystallized methamphetamine could be distributed.

18        THE DEFENDANT: Well, yes, as I told you, I was

19 there because I was interested in them paying me.  Like I

20 kept working because I wanted them to pay me, but they

21 were not paying me.  They told me if I wanted to get

22 paid, that I had to be there, but they told me if I

23 wanted them to pay me, I had to help them in

24 recrystalizing that drug.  I didn't want to be there.  I

25 wanted to leave there because --

1    THE COURT: Tell me about your past.  Have not
2  you been involved in drug trafficking in the past at the
3  state level and the federal level?
4    THE DEFENDANT: What was that?
5    THE COURT: Do you have previous convictions for
6  drug trafficking?
7    THE DEFENDANT: Yes.
8    THE COURT: How many?
9    THE DEFENDANT: Two, three.
10    THE COURT: Three in the past; is that correct?
11    THE DEFENDANT: Yes.
12    THE COURT: So this makes the fourth one; right?
13    THE DEFENDANT: Yes.
14    THE COURT: So tell me at what point are you
15  going to realize that this type of activity does not help
16  you at all insofar as the criminal justice system is
17  concerned?
18    THE DEFENDANT:  I know the thing is when they
19  deported me last time I didn't want to come back here.  I
20  had an automobile accident.  The person who hit me took
21  off, and they left me, my wife, my daughter, a sister of
22  mine, and her daughter.  They left us for dead there.
23  They left us for dead there.  I had to pay for all the
24  expenses related to everything my daughter broke her leg;
25  my wife broke her hand; my sister both of her hands, five

1  ribs, this part of her eye fell out, eye lid and

2  everything.  They did two surgeries on her.  They put

3  skin from her buttocks on her eye, and I had to pay for

4  everything, all of the surgeries, and then this last time

5  they deported me, they robbed me in Mexico.

6       I was working right and did not want to come back

7  here.  In fact, when I came here, I told no one I was

8  coming because I no longer wanted to work in drugs.  And

9  I had worked at a dairy plant in Mexico, and I wanted to

10 work there.  I was headed that way.  And I know I did

11 wrong in any case when I became involved in drugs.  I ask

12 you for a last chance and that you consider my case and

13 why I again became involved in drugs.

14      I swear that maybe I will not have the time to be

15 completely repentant for all of the things that I did,

16 but I have nothing in Mexico.  I don't have a house.  I

17 have nothing.  But I promise you, if you give me another

18 chance when I get out, I will not come back here.  I will

19 work in what I can get.  I in Mexico have never wanted to

20 get myself involved in cartels or anything like that.  I

21 want to know nothing of that.  I want to work right.

22 Please give me a chance.

23      My mother is sick, and I would like to ask you for

24 the opportunity to allow me to see her again while she is

25 alive.

1    THE COURT: All right, thank you, Mr. Betancourt.

2  Mr. Meitl, would the government like to be heard?

3    MR. MEITL: Yes, Your Honor.  I think

4  Mr. Betancourt has been given a substantial break.  To

5  the extent he is asking for a variance, I think that that

6  is incorporated into the 240 month cap.  The Court has

7  attached on it, but his criminal history shows that he

8  has been drug trafficking for most of his adult life and

9  that large sentences given by other judges have not

10  deterred him from continuing to engage in that behavior.

11  Specifically, I will point out I know the Court has

12  already seen is a federal conviction in Oregon.

13    He was sentenced to 46 months in 2006.  As soon as

14  he got out, he started engaging in trafficking

15  methamphetamine in Georgia.  He was arrested there and

16  was sentenced to 25 years in prison.  That didn't deter

17  him.  As soon as he got out on that sentence far too

18  early he reengaged in this crime here and graduated up

19  the chain of the amount of drugs that he has been moving.

20  Of course, here we are talking about 169 kilos that he is

21  responsible for of methamphetamine.

22    In addition to that, he has been deported multiple

23  times and reentered.  I don't think there is anything

24  that the Court can do to deter this individual going

25  forward, so we ask for the 240-month sentence.  We

1  believe it is appropriate given the facts of the case and

2  comparison to other defendants, his criminal history, and

3  that's what we'd ask for, Your Honor.

4        THE COURT: All right, thank you, Mr. Meitl.

5     Is there any reason why sentence cannot be lawfully

6  imposed at this time?

7        MR.  MEITL: No, Your Honor.

8        MS. KIME-GOODWIN: No, Your Honor.

9        THE COURT: The Court has considered the

10 Presentence Report.  The Court has also considered the

11 advisory guidelines.  The Court has also considered all

12 of the statutory factors that it mentioned earlier during

13 the course of this hearing.  The Court is faced with the

14 task or responsibility of coming up with a sentence that

15 is fair, just, and reasonable, and one that is no greater

16 than necessary to accomplish the statutory objectives of

17 paragraph (a)(2) Section 3553(a) Title 18.

18       As the Court pointed out, in addition to

19 considering the factors of paragraph (a)(2), the Court is

20 allowed to consider the provisions of paragraph (a)(1).

21 Those provisions allow a court to consider the history

22 and characteristics of an individual as well as the

23 nature and the circumstances of the offense.

24       The Defendant, Mr. Betancourt has requested a

25 variance.  He made reference to the other two defendants

1  that the Court has sentenced.  There are two other

2  defendants who have not been sentenced so the Court

3  cannot talk about them because the Court does not know

4  yet what he is going to do, but the Court has pointed out

5  the difference between the other two defendants,

6  Mr. Rodriguez Rosales and Mr. Jose Maria Uvalle.  Just as

7  a recap both of those Defendants had a Criminal History

8  Category of I.  Mr. Betancourt has a Criminal History

9  Category of 6. Mr. Betancourt received the career

10  offender enhancement.

11      The other thing that the Court would note that

12  Mr. Betancourt is older than these other two Defendants

13  that the Court has sentenced, and given what has happened

14  to him in the past, the Court believes that he should

15  realize that crime does not pay especially when three of

16  the previous four offenses involved drugs.

17      The government raises a good point.  If a 25-year

18  sentence did not deter him, how would a sentence of less

19  than 20 years deter him, and the Court is not diminishing

20  or making light of anything Mr. Betancourt has stated

21  about him growing up and the things he has gone through.

22  But at some point in time, especially given his age, he

23  has to realize that criminal conduct is not the way to

24  go.  If there were a situation whereby a person had

25  received "X" amount of years on a drug distribution case

1  or possessing drugs and a little bit more the next time

2  and a little bit more the next time, that would be one

3  thing, but here we have a sentence of 25 years that

4  exceeds the statutory max here and as stated before, that

5  did not deter him.

6      Those factors in paragraph (a)(2) sort of emergency

7  at some point you talk about respect for the law.  You

8  talk about just punishment.  My point is not only did a

9  25-year sentence did not deter him, then the question

10  becomes what is just punishment.

11      The rhetorical question is just punishment -- just

12  punishment for 25 years in the previous sentence and now

13  you are looking at a sentence with a statutory max of 25

14  years.  What is the basis for going below that when those

15  other sentences especially a 25-year sentence did not

16  seem to have the desired or intended effect?

17      I would also say again that I think that

18  Mr. Betancourt is markedly different from the other two

19  defendants I sentenced thus far, and I do not think there

20  is any unwarranted sentencing disparity and other two

21  Defendants.  The Court has adequately documented the

22  record as to why their situation is different from the

23  one facing Mr. Betancourt.

24      I have said before that there are three areas where

25  the guidelines as far as I am concerned go off the chart.

1     That is in drug cases when there is a high quantity as it

2 did here, the guideline range 360 to life, the low end,

3 360 months exceeds the statutory maximum by 120 months.

4 Another category is child pornography.  Another category

5 is when there is a high financial loss.  It is not

6 uncommon for the guidelines sentence to greatly exceed

7 the statutory max in those cases because there are so

8 many add-ons or adjustments and so forth.  I have taken

9 that into account.

10     Not withstanding what Mr. Betancourt has said, a

11 20-year sentence is justified and is totally consistent

12 with the standard set forth in paragraph (a)(2) of

13 Section 3553.

14     Therefore, the judgment of the Court is that

15 Mr. Paulino Gomez Betancourt is hereby committed to the

16 custody of the Federal Bureau of Prisons for a term of

17 240 months or 20 years.  The Court would also note, and I

18 think it has probably come out in the record, but

19 Mr. Betancourt has been deported at least three times,

20 which means he has entered this country illegally at

21 least four times.

22     In addition to the sentence the Court imposed, one

23 of 240 months, the Court imposes a special assessment of

24 $100 which is required under the law because there was

25 one felony conviction.

1    With respect to a fine, the Court imposes no fine

2 against Mr. Betancourt because the Court determines that

3 he does not have the financial resources or future

4 earning capacity to pay a fine within the applicable

5 range.  The Court orders no community restitution for the

6 same reason.

7    Let me ask you this, Ms. Kime-Goodwin, as to

8 whether this sentence should run concurrently or

9 consecutively to the pending revocation hearing.  What is

10 the Defendant's position on that?

11    MS. KIME-GOODWIN: Your Honor, we would ask the

12 Court to run it concurrently, but Your Honor, of course,

13 under USSG 5G1.3 revocation sentences don't normally run

14 concurrently.  They are run consecutively.  If the Court

15 would run concurrently, it would just be the Court's

16 discretion if the Court finds the sufficiency of this

17 sentence is enough.  Of course, we are going to urge that

18 at the revocation hearing, but we urge that here, but

19 that is the state of the law under the guidelines.

20    THE COURT: Isn't it also true that what is

21 pending with respect to the revocation matter is not

22 related to the offense of conviction that we are dealing

23 with now?

24    MS. KIME-GOODWIN: That would be correct, Your

25 Honor.  It's a 1326 case.  It does not have any relation

1   to this case, so again, it would just be at the Court's

2   discretion if the Court were to make it concurrent.

3           THE COURT: Mr. Meitl, do have you any comment or

4   reaction to that?

5           MR. MEITL: Your Honor, I think what the Court

6   is asking is the basis for his revocation the same as the

7   facts here and they are meaning he committed this

8   violation, but we will defer to the Court.  We will defer

9   to the Court to run concurrently or consecutively.

10          THE COURT: All right, thank you, Mr. Meitl.

11      All right, in exercising its discretion given the

12  length of this case, the Court will order that the

13  sentence here will run -- wait just one minute.

14      (PAUSE IN PROCEEDINGS.)

15          THE COURT: All right, let me back up a bit.

16  Earlier, when I asked you question, Mr. Meitl, about

17  whether this case, the one we are dealing with now that

18  is related to his revocation, I thought you said that

19  they were.  Is not the revocation based on the case

20  transferred from Georgia?

21          MR. MEITL: It is, Your Honor, but my

22  understanding is that the basis for his revocation in

23  Georgia is that he committed this offense.  Meaning, I am

24  looking at document number 4, Case Number 3:20-CR-615,

25  the nature is noncompliance, and they basically restate

1  the indictment in this case, yes, he is being revoked for

2  the 1326 case, that is the original offense, but the

3  nature of his offense is the instant case.  If I am

4  incorrect, I am sorry.  That is my reading of it, though.

5          MS. KIME-GOODWIN: Your Honor, if I may, that is

6  correct.  I mean, this is -- that is why the nature of

7  the violation to the revocation, but it is a Grade A

8  violation based on this offense.

9          THE COURT: Well, the reason why probation

10  characterizes this as an case unrelated to the case in

11  Georgia, so I don't know how that was interpreted or

12  what.  Anyway, given the length in this case, the Court

13  will order the sentence to run concurrently to the

14  sentence it imposes in the revocation case.

15          THE COURT: Mr. Betancourt, the Court asked you

16  earlier whether you had any questions concerning Part G

17  of the Presentence Report, and you stated that did you

18  not.  You also stated that you understood the terms of

19  supervision recommended  by the probation officer and the

20  justification therefore.  In light of those statements

21  made to the Court, the Court is accepting the

22  recommendations by the probation officer.  Since the

23  Court has accepted those recommendations, they are now

24  binding on you and the acceptance of the order of the

25  Court and you are to abide by those terms and conditions

1  of supervision, and the term that the Court imposes is

2  three years.

3      And the Court imposes such term to serve as an extra

4  measure of deterrence to prevent you from illegally

5  entering the United States.  So it is clear, your term of

6  supervision is for three years and those conditions and

7  terms recommended by the probation officer are accepted

8  by the Court and therefore binding on you.

9      Just so you know, this means if you re-enter this

10  country illegally, you can be prosecuted for illegal

11  re-entry, and the Court can also sentence you to prison

12  for violating your terms and conditions of supervision.

13  Do you understand that, sir?

14          THE DEFENDANT: Yes, sir.

15          THE COURT: I believe, Ms. Kime-Goodwin, you

16  requested FCI-Fort Worth; is that correct?

17          MS. KIME-GOODWIN: Yes, Your Honor.

18          THE COURT: All right, the Court will make that

19  recommendation to the Bureau of Prisons, that is, to the

20  facility FCI-Fort Worth.

21      Mr. Betancourt, please be advised that it is the

22  Bureau of Prisons not the Court that makes the final

23  decision as to where you serve your sentence.  I

24  understand also to the extent the recommendation or

25  request from the sentencing judge is consistent with the

1  policies and rules of the Bureau of Prisons, the Bureau

2  of Prisons does make a reasonable attempt to accommodate

3  that recommendation or request.

4      All right, Mr. Betancourt, based on what the Court

5  has done here today and in light of the plea agreement,

6  in particular, paragraph 12, page 6, the Court does not

7  believe there is any basis for you to appeal its

8  decision.  In this case, however, you disagree, any

9  appeal that you take must be taken within 14 days of my

10  written decision which will likely issue tomorrow.

11      If you cannot afford the costs of an appeal, you

12  have the right to ask for permission to proceed in forma

13  pauperis.  Also, if you cannot afford an attorney for

14  purposes of an appeal, you have the right to request an

15  attorney and if you qualify for such an appointment, an

16  attorney will be appointed to represent you.

17          MR.  MEITL: Yes.

18          THE COURT: Anything further?

19          MR.  MEITL: The government moves to dismiss the

20  Count 1 of the indictment.

21          THE COURT: The request is granted.  Anything

22  else?

23          MS. KIME-GOODWIN: No, Your Honor.

24          (HEARING CONCLUDED.)

25  I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.

Charyse C. Crawford, CSR, RPR
1100 Commerce, Room 1544, Dallas, Texas 75242
(214)753-2373 Telephone
Charyse_Crawford@txnd.uscourts.gov or charysecrawford@gmail.com

1    I further certify that the transcript fees format comply
     with those prescribed by the court and the Judicial
2    Conference of the United States.

3              S/Charyse C. Crawford              01-04-2022
     Signature_____ Date:_____
4              Charyse C. Crawford, CSR, RPR
               United States Court Reporter
5              Northern District of Texas - Dallas Division

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25